UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES T. MALONEY and RIVER OAKS
MARINA, LLC,

        Plaintiffs,

        v.

TOWN OF GRAND ISLAND et al.,

        Defendants.

23-CV-658-LJV
DECISION & ORDER

---

On July 7, 2023, the plaintiffs, James T. Maloney and River Oaks Marina, LLC ("River Oaks"), commenced this action against the Town of Grand Island ("the Town") and various Grand Island employees and councilmembers. Docket Item 1. According to the complaint, the Town and the individual defendants, sued in both their individual and official capacities, engaged in a concerted campaign to put the plaintiffs out of business and thereby violated the plaintiffs' rights under New York common law and the United States Constitution.[1]  *Id.*

On August 5, 2024, the defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that this Court should apply the abstention doctrine set forth in *Colorado River Water Conservation District v. United*

---

[1] More specifically, the complaint asserted claims based on procedural due process, substantive due process, equal protection, abuse of process, unlawful taking, conspiracy, First Amendment retaliation, failure to train and supervise, unreasonable search and seizure, tortious interference with contractual relations, intentional infliction of emotional distress, and negligent infliction of emotional distress. Docket Item 1 at ¶¶ 160-280.

*States*, 424 U.S. 800 (1976), in light of ongoing proceedings brought by the Town against Maloney and River Oaks in New York State Supreme Court, Erie County.  *See* Docket Item 12.  On August 19, 2024, Maloney and River Oaks responded, Docket Item 14, and on August 26, 2024, the defendants replied, Docket Item 15.

For the following reasons, the defendants' motion to dismiss is DENIED.

## BACKGROUND[2]

### I. THE STATE COURT ACTION

Maloney is a Grand Island resident and the owner of River Oaks, which operates as a marina in the Town.  Docket Item 1 at ¶¶ 5, 38; Docket Item 12-12 at 37.  On April 8, 2022, the Town commenced a lawsuit against Maloney and River Oaks in New York State Supreme Court, Erie County, under New York State Executive Law §§ 381-82 and New York State Town Law § 268(2).  Docket Item 1 at ¶ 125; Docket Item 12-10.  In that action, the Town sought a court order requiring Maloney and River Oaks to remediate "dangerous and defective conditions at" River Oaks that purportedly violated the New York State Uniform Fire Prevention and Building Code, the New York State Fire Code, and the Town's zoning code (collectively, the "Codes").  Docket Item 12-10 at ¶¶ 9, 14,

---

[2] On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).  Accordingly, the following facts are taken from the complaint, Docket Item 1, and the affidavits and documents submitted by the defendants in support of their motion to dismiss, Docket Items 12-2 to 12-19.  The Court also takes judicial notice of the filings in the ongoing state court action.  *See Windward Bora, LLC v. Bank of New York Mellon*, 2020 WL 7042761, at *2 (E.D.N.Y. Nov. 30, 2020) (explaining that in deciding either a Rule 12(b)(6) or Rule 12(b)(1) motion to dismiss, "[a] court may take judicial notice of documents in the public record, including state court filings").

18, 123, 132.  The Town also requested a court order enjoining River Oaks from opening for public use until it complied with the Codes.  *Id.* at ¶ 132.

After the complaint was filed, the state court entered a temporary restraining order ("TRO") "shut[ting] down the entire [m]arina" pending a hearing.  Docket Item 1 at ¶ 132; *see also* Docket Item 12-11 at 3.[3]  Following that hearing and a subsequent inspection[4] of River Oaks by the state court and the parties, the state court entered an amended TRO on May 12, 2022, permitting certain sections of the marina to reopen.  Docket Item 1 at ¶ 142; *see also* Docket Item 12-13 at 4-5.

Maloney and River Oaks later moved to dismiss the Town's complaint, and the state court denied that motion.  Docket Item 12-16.  Maloney and River Oaks then answered the Town's amended complaint[5] and raised several affirmative defenses.  *See Town of Grand Island v. River Oaks Marina, LLC*, Case No. E804379/2022, Docket Item 106 at 2-7 (Sup. Ct. Erie Cnty. Dec. 1, 2023).  A subsequent stipulation entered into by the parties on March 11, 2024, permitted River Oaks to remain open and set a series of rolling deadlines for completing certain work "to the Town's satisfaction."  Docket Item 12-19.

---

[3] Page numbers in docket citations refer to ECF pagination.

[4] The complaint in the case at bar says that the TRO was issued pending the state court's own inspection of the marina, Docket Item 1 at ¶ 132, but that provision does not appear in the TRO, *see* Docket Item 12-10 at 3.  Regardless, the amended TRO entered in the state court action notes that the court had participated in an inspection of River Oaks.  Docket Item 12-13 at 3.

[5] The Town amended its complaint in the state court action on April 25, 2022.  *See* Docket Item 12-12.  The amended complaint added claims seeking injunctive relief for violations of state navigation law and the Town's zoning code, along with a claim requesting an order enjoining Maloney and River Oaks "from continuing to operate [River Oaks] in a manner that constitutes a public nuisance."  *Id.* at ¶¶ 143-65.

Under the stipulation, once the Town agreed that the work items were "sufficiently remediated," other marina areas would reopen to the public. *Id.* at 4. If the issues were "not remediated to the Town's satisfaction, the parties [would] proceed to trial on June 17 and 18, 2024." *Id.* At that trial, "the Town [would] seek immediate injunctive relief and [Maloney and River Oaks would] waive all defenses . . . except as to safety condition[s at] the Marina." *Id.* Based upon this Court's review of the docket in the state court action, no trial or hearing appears to have occurred on June 17 and 18, 2024,[6] and no other documents have been filed since that stipulation was entered. *See Grand Island*, Case No. E804379/2022. The state court docket also indicates that a further status conference is scheduled for December 2025. *See id.*

## II. THE FEDERAL COURT ACTION

On July 7, 2023, while their motion to dismiss the state court action was still pending, Maloney and River Oaks sued the Town and the individual defendants in this Court. In this action, Maloney and River Oaks allege that the state court litigation was brought not to enforce the Codes but rather as the culmination of the defendants' campaign to put River Oaks out of business. According to the complaint, the story began in June 2021 when a River Oaks customer was removed from the marina for "aggressive and abusive" behavior and had his "slip fee" refunded. Docket Item 1 at ¶¶ 28-34, 43, 207. After his removal, that disgruntled former customer, who is not named as a defendant in this action, "stated publicly to members of the Town of Grand Island at

---

[6] The defendants say that as of the filing of their motion to dismiss, "the parties have had several compliance conferences related to the [s]tate [c]ourt [s]tipulation." Docket Item 12-2 at ¶ 31.

4

large that his goal was/is to permanently close [River Oaks]," and he "improperly influenced" some of the individual defendants to attempt "to put [Maloney and River Oaks] out of business." *Id.* at ¶¶ 33-34.

In support of that contention, Maloney and River Oaks allege that:

- individual defendants John Whitney, a Town supervisor, and Thomas Digati, a Town councilmember, "worked in concert" with the former customer to "cause" a 2021 inspection of River Oaks by the New York State Department of Environmental Conservation ("NYSDEC"), the Coast Guard, and the U.S. Army Corps of Engineers, *id.* at ¶ 35;

- individual defendants Ronald Milks and Robert Hassett—employees of the Town's Building, Code Enforcement, and Zoning Department—entered River Oaks without authorization in response to complaints by the former customer, *id.* at ¶¶ 37-39, 43;

- the Town never sent them notices of violations relating to conditions at River Oaks, *id.* at ¶ 69;

- the Town's board twice met off the public record when voting to authorize litigation against Maloney and River Oaks, *id.* at ¶¶ 61-67, 117-18;

- the Town set unrealistic deadlines for remediating violations of the Codes, *id*. at ¶¶ 105, 113;

- the Town never responded to River Oaks and Maloney's proposed remediation schedule, *id.* at ¶ 115; and

- the Town included false statements in its state court complaint, *id.* at ¶¶ 127-28.

As noted above, the defendants moved to dismiss the complaint on abstention grounds. Docket Item 12. In their motion to dismiss, the defendants dispute the narrative presented by Maloney and River Oaks in this action, saying that River Oaks has a long history of unsafe conditions that has forced "state and local authorities . . . to take legal action." *See* Docket Item 12-2 at ¶¶ 5-7. And they say that in light of the

5

ongoing state court proceedings that they commenced to "carry[] out [their] enforcement duties and public safety responsibilities," this Court should abstain under the *Colorado River* doctrine. *Id.* at ¶ 32.

## **LEGAL PRINCIPLES**

"[I]n certain 'exceptional circumstances' a federal court may abstain from exercising jurisdiction where an existing parallel state-court litigation would accomplish a 'comprehensive disposition of litigation.'" *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) (quoting *Colorado River*, 424 U.S. at 813, 817-18 (emphasis omitted)). "A motion to dismiss[7] based on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Stahl York Ave. Co., LLC v. City of New York*, 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015), *aff'd*, 641 F. App'x 68 (2d Cir. 2016) (summary order). "A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).

---

[7] Cases may be either stayed or dismissed under the *Colorado River* abstention doctrine. *See Harris v. TD Ameritrade, Inc.*, 2018 WL 1157802, at *5 (S.D.N.Y. Feb. 14, 2018) ("The Second Circuit has made it clear that the *Colorado River* doctrine governs motions to stay as well as motions to dismiss[] where the basis of the motion is the pendency of a potentially dispositive concurrent state court case."). Here, the defendants ask only that the Court dismiss this action.

**DISCUSSION**

I. **PRINCIPLES OF *COLORADO RIVER* ABSTENTION**

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. "*Colorado River* abstention is appropriate in limited 'situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts.'" *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 181 (E.D.N.Y. 2012) (quoting *Colorado River*, 424 U.S. at 817). "[A]bstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). "The burden of persuasion is with the party moving for *Colorado River* abstention." *Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 2020 WL 1503558, at *5 (S.D.N.Y. Mar. 30, 2020), *aff'd*, 830 F. App'x 50 (2d Cir. 2020) (summary order).

"A court deciding whether to abstain under *Colorado River* engages in a two-step inquiry." *192 Morgan Realty, LLC v. Aquatorium, LLC*, 2022 WL 123567, at *4 (E.D.N.Y. Jan. 13, 2022). First, the "court must make a threshold determination that the federal and state court cases are 'parallel.'" *Dalzell Mgmt. Co., Inc. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013) (quoting *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). Federal and state proceedings are parallel "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).

"After determining that the state and federal proceedings are parallel, the question becomes whether the court should exercise its discretion to abstain." *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 298 (S.D.N.Y. 2017). In doing so, a court considers the following six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citations omitted). "Where a *Colorado River* factor is facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (quoting *Woodford*, 239 F.3d at 522). No single factor is dispositive, and determining whether abstention is warranted is ultimately "left to the trial court's sound discretion." *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 142 (E.D.N.Y. 2013) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

II. **WHETHER THE TWO ACTIONS ARE PARALLEL**

To determine whether actions are parallel for purposes of *Colorado River* abstention, "[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (quoting *In re Comverse Tech, Inc.*, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)). "Mere 'commonality in subject matter' does not render actions parallel." *Mochary*, 42 F.4th at 86 (quoting *Dittmer*, 146 F.3d at 118). "Further, if the court has

8

any doubt regarding the parallel nature of the two actions, the outcome should be resolved in favor of exercising federal jurisdiction." *Dalzell*, 923 F. Supp. 2d at 597 (citation and internal quotation marks omitted).

The defendants say that this action and the state court action are parallel because they involve the same core allegations and that "[t]he factual inquiries and determinations required by both courts are exactly the same."  Docket Item 12-1 at 16. In fact, the defendants say, "[t]his federal action cannot be resolved . . . with[out] answering the same questions [in] both cases," and "[t]he outcome of the [s]tate [c]ourt [l]itigation could moot this proceeding entirely."  *Id.* at 14, 17. This Court disagrees.

As noted above, Grand Island commenced the state court action against Maloney and River Oaks under Executive Law §§ 381-82 and New York State Town Law § 268(2).  *See* Docket Item 12-10.  Section 381 of the Executive Law delegates the administration and enforcement of state building and fire prevention codes "to local governments—towns, cities and villages—which may choose to enforce on their own or in conjunction with another local government."  *Clements v. New York Sec. of State*, 227 A.D. 3d 84, 88, 208 N.Y.S.3d 337, 340 (3d Dep't 2024) (citing N.Y. Exec. Law § 381).  And under section 382, New York State courts "may order . . . an abatement of [a building] condition" that violates state building and fire prevention codes.  N.Y. Exec. Law § 382(3). Town Law section 268(2), in turn, authorizes towns in New York State to "institute any appropriate action or proceedings to . . . restrain, correct or abate" zoning violations.  N.Y. Town Law § 268(2); *see also Ruotolo v. Town of New Paltz*, 2023 WL 2500655, at *15 (N.D.N.Y. Mar. 14, 2023) ("New York Town Law § 268 clearly

9

authorizes a town to institute any action or proceeding to enforce its zoning ordinances.").[8]

As also noted above, the most recent document filed in the state court action is the stipulation under which Maloney and River Oaks agreed to complete various work items by a series of deadlines and, if a hearing or trial was necessary in the state court action, agreed to waive all their affirmative defenses "except as to safety condition[s]" at River Oaks. *See* Docket Item 12-19 at 4. So what appears still to be at issue in that action are safety conditions at River Oaks, its compliance with the Codes, and the progress of the work on the remediation items contained in the March 2024 stipulation. And if those issues proceed to a trial or hearing, the state court would presumably decide whether or not conditions at River Oaks violated the Codes or constituted a public nuisance. *See generally* Docket Item 12-12 at ¶¶ 116-65 (enumerating the Town's causes of action against Maloney and River Oaks).

The defendants do not specify the claims in this action that a state court ruling would moot, instead saying generally that "the essence of all" the plaintiffs' claims in the federal complaint "is malicious prosecution" and that "[b]ecause there can be no malicious prosecution claims if there is probable cause, a determination by the state court of the validity of the [state court] prosecution terminates virtually every cause of action raised here." *See* Docket Item 15 at 6.

---

[8] The additional claims in Grand Island's amended state court complaint also seek the same injunctive relief as the claims under sections 381-82 and section 268. *See* Docket Item 12-12 at ¶¶ 143-56 (requesting injunctive relief under Navigation Law § 46-a and Grand Island Town Code § 125-13(C)), 157-65 (stating that River Oaks posed a public nuisance entitling Grand Island to injunctive relief).

As to the defendants' focus on probable cause, they are correct that "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). And although Maloney and River Oaks did not bring a malicious prosecution claim in this action, probable cause may defeat some of the claims that they did bring, such as their First Amendment retaliation and unreasonable search and seizure claims. *See Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("The existence of probable cause will defeat a claim of . . . unreasonable search and seizure. . . . It will also defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive." (citations omitted)).

But the probable cause analysis is not as simple as the defendants make it out to be. To be sure, if the state court was to decide that certain conditions at River Oaks violated the Codes or constituted a public nuisance, that would be strong evidence of the defendants' probable cause to bring the state court action. That is because at least in the criminal context, a conviction will "conclusively establish[] the existence of probable cause for [an individual's] arrest[] for the purposes of a [section] 1983 action." *See Corley v. Vance*, 365 F. Supp. 3d 407, 444 (S.D.N.Y. 2019) (quoting *Kennedy v. City of New York*, 2015 WL 6442237, at *16 (S.D.N.Y. Oct. 23, 2015) (internal quotation marks omitted)). But the defendants do not cite any caselaw extending this principle to suits brought to enforce state or local code provisions. Nor do they grapple with the complexity of how probable cause, which is generally determined based on the

11

circumstances known to law enforcement at the time of an arrest,[9] *see, e.g.*, *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 505 (S.D.N.Y. 2023), would be conclusively shown by a finding that River Oaks is not now in compliance with certain conditions.

As the defendants admit, the state court action that the Town brought focuses on remediating conditions at River Oaks. For example, the Town says in their amended state court complaint that "[t]he conditions at [River Oaks] . . . plainly endanger the health, safety[,] and welfare of [River Oaks] employees and the public." Docket Item 12-12 at ¶ 76; *see also id.* at ¶ 138 ("[I]n its current state, [River Oaks] is unfit for human occupancy[] and constitutes a hazard to its occupants or to the public."). Put another way, if the state court action ever proceeds to a trial or hearing, its focus will necessarily be on the then-current conditions at River Oaks—that is, whether River Oaks complies with the Codes when the case is tried and not whether it did when the Town brought the state court action.

So the state court's hypothetically deciding that conditions at River Oaks violate the Codes would be strong evidence of the Town having had probable cause when the case was commenced, as many conditions may very well still be the same as they were when the enforcement proceeding was brought. But as the defendants concede, some remediation work has occurred at River Oaks. *See* Docket Item 12-2 at ¶ 31. And it is

---

[9] With respect to zoning and code enforcement, other district courts within this circuit have looked to the facts known to the relevant official at the time of commencing a code enforcement action. See *Lepper v. Vill. of Babylon*, 2022 WL 939719, at *21-22 (E.D.N.Y. Mar. 29, 2022) (finding that probable cause existed to prosecute an "unfinished treehouse" based on defendants' observations of structure); *Thomas v. Genova*, 698 F. Supp. 3d 493, 510-11 (E.D.N.Y. 2023) (town inspector had probable cause to commence code enforcement action based on facts such as property "visibly being operated as a two-family home in a one-family zone").

plausible that conditions have changed enough that even if the state court hypothetically found that River Oaks was or was not in violation of the Codes, this Court might find differently as to whether probable cause existed when the state court action was commenced. So this Court cannot say that the state court finding would conclusively establish the existence or nonexistence of a probable cause defense for many of the claims brought in this matter.

This Court need not wade any further into these complexities, however, because there are two independent reasons why the two actions are not parallel. First, even if the state court ruled against Maloney and River Oaks following a hearing or trial, that ruling would not completely dispose of the claims in this matter. For instance, Maloney and River Oaks have raised an equal protection claim in this action, alleging that they were "singled out and treated very differently from other business owners" in Grand Island. Docket Item 1 at ¶ 200. Without passing on the merits of that claim, it is unclear how a determination that conditions at River Oaks violate the Codes would necessarily resolve this cause of action, which essentially alleges that other businesses in Grand Island may also be violating the Codes but have not been treated in the same manner as Maloney and River Oaks. *See id.* at ¶¶ 200-01.

In fact, although Maloney and River Oaks do not label the type of equal protection claim that they bring, they appear to bring a claim of selective enforcement. As part of a viable selective enforcement claim, "a plaintiff must [show] that (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise

of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).  "By its very nature, a claim of selective enforcement requires actual, or at least threatened, enforcement." *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 449 (W.D.N.Y. 2009); *see also Espinoza v. City of New York*, 2012 WL 4761565, at *5 (S.D.N.Y. Aug. 3, 2012) ("[A] claim sounding in selective enforcement of the law presumes that the plaintiff is subject to having a law enforced against her; the essence of the claim is not that there is no probable cause to arrest, but that others equally liable were not treated in the same fashion.").  So a determination that conditions at River Oaks violate the Codes would not resolve the equal protection claim.

Second, the remedies sought in each action, as well as those seeking those remedies, differ.  In the state court action, the Town is seeking injunctive relief against Maloney and River Oaks—namely, the remediation of various violations of the Codes.  In this action, Maloney and River Oaks request compensatory damages, punitive damages, and attorney fees *from* the Town and various Town councilmembers and employees for, among other things, selective enforcement.  *See* Docket Item 1 at 49.  Although the defendants note that Maloney and River Oaks *could* receive compensation if the state court "determines that the TRO was improvidently issued," Docket Item 15 at 7, that hypothetical does not alter the current imbalance of the remedies being sought in each action.  Nor would compensation awarded for an improvidently issued TRO fully

14

compensate Maloney and River Oaks for all the injuries that they say they sustained as a result of the defendants' alleged conduct.[10]

Therefore, at the very least it appears highly uncertain as to whether a future state court determination would, as the defendants say, "moot this proceeding entirely." Docket Item 12-1 at 14. And "[i]n light of the heavy presumption favoring the exercise of federal jurisdiction," *Dalzell*, 923 F. Supp. 2d at 602, any uncertainty as to the parallel nature of state and federal proceedings "should be resolved in favor of the exercise of federal jurisdiction," *Shields*, 891 F. Supp. 2d at 577 (citation omitted).

In sum, the Court cannot conclude that resolution of the ongoing state court proceedings would comprehensively dispose of the parties' dispute in this case.[11] And

---

[10] Although Maloney and River Oaks certainly say that they were damaged by the TRO itself, *see, e.g.*, Docket Item 1 at ¶ 254 ("Defendants interfered with [River Oaks and Maloney's] contracts with Town [] residents and slip holders by . . . actually closing [River Oaks] . . . for 22 days."), they also allege damages from conduct committed prior to the state court's issuance of the TRO. *See, e.g., id.* at ¶¶ 245-47 (alleging that defendants Milks and Hassett searched River Oaks "without authorization," depriving Maloney and River Oaks "of their rights under the Fourth and Fourteenth Amendment[s] to be free from unreasonable search and seizure"); ¶¶ 275-77 (alleging that the defendants "caus[ed] NYSDEC, the Coast Guard, and U.S. Army Corps of Engineers to inspect [River Oaks] in hopes that these agencies would find violations or other issues," exposing Maloney and River Oaks "to an unreasonable risk of emotional distress" and causing "anguish, embarrassment[,] and humiliation").

[11] The defendants also say that these actions are parallel because "the parties in both proceedings are the same," with "the Town and its employees and officers enforcing the law on one side and [River Oaks] and its owner on the other." Docket Item 12-1 at 16. Although that statement is not completely correct—the individual defendants in this action are not parties in the state court action—all individual defendants appear to be Town employees or councilmembers, *see* Docket Item 1 at ¶¶ 9-20, and "[c]omplete identity of parties . . . is not required" for actions to be parallel. *See First Keystone*, 862 F. Supp. 2d at 182 (quoting *GBA Contracting Corp. v. Fid. & Deposit Co.*, 2001 WL 11060, at *1 (S.D.N.Y. Jan. 3, 2001)). Nevertheless, that one commonality does not outweigh the differences in facts, claims, and remedies between the two actions discussed earlier.

15

because this action and the state court action are not parallel, this Court need not and does not reach the six-factor balancing test for determining whether or not abstention is appropriate.[12]

### III. WHETHER A DISCRETIONARY STAY IS WARRANTED

In light of the ongoing state court proceedings, the difficulties of litigating two separate matters at the same time, and the potential of the state court action's clarifying at least some of the issues in this case, other action by this Court may be appropriate. "Even when a court does not abstain under *Colorado River*, it may, 'in the exercise of its discretion,' 'stay proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views.'" *Windward Bora, LLC v. Bank of New York Mellon*, 2020 WL 7042761, at *7 (E.D.N.Y. Nov. 30, 2020) (quoting *Giulini v. Blessing*, 654 F.2d 189, 193 (2d Cir. 1981) (alteration omitted)); *see also Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 2011 WL 13261585, at *2 (S.D.N.Y. Nov. 3, 2011) (concluding that actions were not parallel for purposes of *Colorado River* abstention but

---

[12] Even though the Court need not reach the six-factor balancing test for determining whether to abstain from a parallel state court action, it notes that some of those factors appear to be at the very least neutral, if not outright favoring Maloney and River Oaks. For example, as the defendants concede, both courts are located in Erie County, New York, and are thus equally convenient for the parties. *See* Docket Item 12-1 at 18. Moreover, most of the plaintiffs' claims in this action involve issues of federal constitutional law. *See Village of Westfield v. Welch's*, 170 F.3d 116,122 (2d Cir. 1999) ("[W]here the federal court is just as convenient as the state court, that factor favors retention of the case in federal court." (citation and internal quotation marks omitted))*; De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989) ("When the applicable substantive law is federal, abstention is disfavored.").

that discretionary stay of federal action was nevertheless warranted). "When deciding whether to stay a proceeding, courts commonly weigh seven factors: '(1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of the parties, counsel[,] and witnesses; and (7) possibility of prejudice to a party as the result of the stay.'" *Windward Bora*, 2020 WL 7042761, at *7 (quoting *De Carvalhosa v. Lindgren*, 546 F. Supp. 228, 230 (S.D.N.Y. 1982)).

Although it does not find *Colorado River* abstention appropriate, the Court is inclined to stay this matter in its discretion. But because neither side has had the opportunity to address the merits of that approach, both parties shall, within 21 days of the date of this decision and order, provide the Court with supplemental briefing as to whether this Court should enter a discretionary stay.

## **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss, Docket Item 12, is DENIED. Both parties shall, within 21 days of the date of this decision and order, submit supplemental briefing on the issue of whether this Court should order a discretionary stay.

SO ORDERED.

Dated:   March 31, 2025
         Buffalo, New York

                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE